# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| VALENCIA PETERSON and LAKESHA HOOPER, individually and on behalf of themselves and all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> MEDTRONIC, INC., MEDTRONIC USA, INC., MEDTRONIC LOGISTICS LLC, MEDTRONIC SOFAMOR DANEK USA, INC., and MEDTRONIC SOFAMOR DANEK, INC., <br><br> Defendants. | Case No. _____ <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **(JURY DEMAND)** |

Plaintiffs Valencia Peterson and Lakesha Hooper ("Plaintiffs" or "Class Representatives"), by and through their attorneys, Nichols Kaster, PLLP and Collins & Hunter, PLLC, on behalf of themselves individually and on behalf of the proposed Classes of similarly situated women defined below, bring this action against Medtronic, Inc., Medtronic USA, Inc., Medtronic Logistics LLC, Medtronic Sofamor Danek USA, Inc., and Medtronic Sofamor Danek, Inc. (collectively "Defendants" or "Medtronic") to redress gender discrimination in employment and for damages and all other legal, equitable and injunctive relief. Plaintiffs allege upon knowledge as to themselves and otherwise upon information and belief as follows:

## PRELIMINARY STATEMENT

1.    This action challenges Medtronic's unlawful discriminatory policies and practices concerning job assignment, career advancement, performance evaluation, promotion, and compensation. Medtronic's predominantly male leadership retains control over decisions, policies, and practices that result in systemic disparate treatment of female employees at Medtronic and have a disparate impact on female employees. Instead of providing its female

employees with an equal opportunity workplace, which would reward the talent, skill, performance and contribution of female employees and advance their careers, Medtronic has systematically (i) placed or kept female employees in job titles or classifications lower than similarly situated male employees; (ii) failed to develop or provide career advancement opportunities to female employees in a manner commensurate to similarly situated male employees; (iii) denied the promotions of qualified female employees into higher-level jobs and instead promoted less qualified male employees to those higher-level jobs; (iv) failed to promote female employees at the same rate as similarly situated male employees; (v) disparately evaluated and classified female and male employees' job performance; (vi) compensated female employees less than similarly situated men for equal work; and (vii) failed to prevent, adequately investigate or correct instances of gender discrimination in the workplace. As a result, employees are developed, evaluated, compensated, and promoted within a system that is inadequately designed or implemented to equitably compensate or promote female employees without regard to their gender.

2.      To remedy the gender discrimination and unequal pay they have experienced at Medtronic, Plaintiffs, along with the proposed Classes of similarly situated women defined below, are seeking all legal and equitable relief available under federal and state anti-discrimination, equal pay, and retaliation statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 201, *et seq.* ("EPA"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"). Plaintiffs also seek injunctive relief to remedy Medtronic's discriminatory employment policies and practices and ensure that Medtronic immediately ceases to engage in discriminatory practices going forward.

## JURISDICTION AND VENUE

3.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331. The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein because this action asserts claims arising under federal law: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and the Equal Pay Act of 1963, 29 U.S.C. § 201, *et seq.* This Court has supplemental jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendants operate facilities in the Western District of Tennessee, conduct substantial business in this District and because unlawful employment practices were committed in this District.

5.     Plaintiffs Valencia Peterson and Lakesha Hooper have duly filed individual and class charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Both Plaintiffs have received Notices of Right to Sue.

## PARTIES

6.     Plaintiff **Valencia Peterson** ("Ms. Peterson") is a woman who, at all times relevant to this action, lived and worked in the Western District of Tennessee. Ms. Peterson, a current employee of Medtronic, began working for Medtronic in July 2012. Presently, Ms. Peterson is an Industrial Engineer at Medtronic's office in Memphis, Tennessee.

7.     Plaintiff **Lakesha Hooper** ("Ms. Hooper") is a woman who, at all times relevant to this action, lived and worked in the Western District of Tennessee. Ms. Hooper, a current employee of Medtronic, began working for Medtronic during 2008. Presently, Ms. Hooper is a Customer Care Representative IV at Medtronic's office in Memphis, Tennessee.

8.     Defendant **Medtronic, Inc.** is a Minnesota corporation with its operational headquarters located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Defendant Medtronic, Inc. is a global healthcare solutions company that develops, manufactures and sells medical products, technologies and therapies to diagnose and treat a wide variety of chronic diseases and health conditions. According to its website, Medtronic employs approximately 88,000 employees in approximately 160 countries, and is "the world's largest medical technology company." Defendant Medtronic, Inc. operates several offices in Tennessee, including offices at 1800 Pyramid Place, Memphis, Tennessee 38132 and 4340 Swinnea Road, Memphis, Tennessee 38118. Defendant Medtronic, Inc. has a registered agent in Tennessee, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee, 37929-9710.

9.     Defendant **Medtronic USA, Inc.** is a Minnesota corporation with its principal place of business located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Defendant Medtronic USA, Inc. has a registered agent in Tennessee, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee, 37929-9710.

10.     Defendant **Medtronic Logistics LLC** is a Minnesota limited liability corporation with its principal place of business located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Defendant Medtronic Logistics LLC has a registered agent in Tennessee, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee, 37929-9710.

11.     Defendant **Medtronic Sofamor Danek USA, Inc.** is a Tennessee corporation with its principal place of business located at 2600 Sofamor Danek Drive, Memphis, Tennessee, 38132. Defendant Medtronic Sofamor Danek USA, Inc. is one of the world's largest manufacturers of spinal implant devices and biologic bone-grafting products, and develops surgical techniques and computer-assisted surgical instruments. Defendant Medtronic Sofamor

Danek USA, Inc. has a registered agent in Tennessee, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee, 37929-9710.

12.     Defendant **Medtronic Sofamor Danek, Inc.** is an Indiana corporation that is headquartered in Memphis, Tennessee, with its principal place of business located at 2600 Sofamor Danek Drive, Memphis, Tennessee, 38132. Defendant Medtronic Sofamor Danek, Inc. has a registered agent in Tennessee, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee, 37929-9710.

13.     During the applicable statutes of limitations, Plaintiffs and all similarly situated women were current and former "employees" of Defendants, and Defendants were the "employers" of Plaintiffs and all similarly situated women, within the meaning of 42 U.S.C. §2000e(b) and (f), 29 U.S.C. § 203 (d) and (e), and Tenn. Code Ann. § 4-21-102(5).

14.     Plaintiffs bring this action on behalf of themselves and other similarly situated women. Plaintiffs have consented in writing to assert claims under the EPA. (*See* Consent Forms attached as Exhibit A).  As this case proceeds, it is likely that other individuals will sign consent forms and join this action as opt-in plaintiffs.

## FACTUAL ALLEGATIONS

15.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

### PLAINTIFF VALENCIA PETERSON

16.     Ms. Peterson is currently an Industrial Engineer in the Operations Division at Medtronic's Swinnea Distribution Center, located at 4340 Swinnea Road, Memphis, Tennessee 38118.

17.     Medtronic hired Ms. Peterson in July 2012. Prior to working at Medtronic, Ms. Peterson had over eleven years of experience as an Industrial Engineer, with significant experience in project management. Ms. Peterson obtained her Bachelor's Degree from Mississippi State University in Industrial Engineering Technology.

18.     At Medtronic, Ms. Peterson works on teams comprised of employees from different divisions of Medtronic to design physical spaces and work processes. Throughout her employment, Ms. Peterson has consistently received positive performance reviews and has distinguished herself as having a strong technical background and an in-depth knowledge of developing and implementing labor standards, management programs and processes.

19.     Ms. Peterson's supervisor has recognized her subject-matter expertise in industrial engineering, as well as her process and system knowledge. In or around 2015, Ms. Peterson was appointed to lead the weekly meetings of the Quality Sub-Committee Team.

20.     In 2016, Ms. Peterson provided engineering expertise to the Repack Center Design Project, which was nominated for an internal Medtronic award.

21.     Since 2016, Ms. Peterson has obtained Lean Six Sigma Green Belt training and is working towards completing certification.

22.     Nonetheless, despite her performance and contributions to Medtronic during her tenure, Medtronic has discriminated against Ms. Peterson based on her gender.

**Pay and Promotion Discrimination**

23.     Medtronic has discriminated against Ms. Peterson by repeatedly promoting lesser qualified male employees to the Senior Engineer level instead of promoting her. While Medtronic has continued to promote lesser qualified male employees to higher positions in the Operations Division, Ms. Peterson has remained in the same position for the four and a half years

she has been employed by Medtronic. In stark contrast, male employees on Ms. Peterson's team have been promoted within a year of joining the team.

24. Ms. Peterson has made explicitly clear to her supervisor, Arthur Zheng (male), Director of Operations, that she seeks career advancement within Medtronic and that her immediate goal is to be promoted to Senior Engineer. The Senior Engineer position is one level above Ms. Peterson's current position and the next step in her career progression at Medtronic. A promotion to Senior Engineer is accompanied by a significant increase in compensation.

25. At Medtronic, employees and their supervisors complete Development Plans in which the employee outlines his or her career goals at Medtronic. In past Development Plans, Ms. Peterson has identified that her long-term career goal would be Engineer Manager.

26. In or around 2014, Medtronic hired a male employee ("Comparator A") as a Project Engineer on Ms. Peterson's team.

27. On Ms. Peterson's team, despite different titles, each Engineer performs the same type of engineering work but may have a more specialized background in project, packaging or industrial engineering. Nonetheless, despite their specific title, each Engineer on the team performs project, packaging and industrial engineering work for the team and reports to Mr. Zheng.

28. At the time, Ms. Peterson was significantly more qualified for promotion to higher-level positions at Medtronic than Comparator A. Comparator A did not possess an engineering degree or any project management experience. Comparator A frequently sought help from Ms. Peterson with his job duties and admitted that he lacked the requisite expertise on several of the projects he worked on.

29.     Whereas Ms. Peterson has yet to be promoted since her hire in 2012, Comparator A received a promotion to a Manager position in or around 2015, after working on Ms. Peterson's team for approximately one year.

30.     As yet another example, in or around the spring of 2016, Medtronic promoted another male employee ("Comparator B") from Engineer to Senior Engineer after approximately one-and-a-half years of employment. At the time of his promotion, Comparator B had been in the Operations Division for significantly less time than Ms. Peterson, and they had worked on the same or similar projects. The Senior Engineer position that Comparator B was promoted to was not posted internally for other qualified Medtronic employees, such as Ms. Peterson, to apply.

31.     On or about June 28, 2016, during her year-end review meeting, Ms. Peterson asked Mr. Zheng if she would be receiving a promotion. Mr. Zheng replied that he would not be promoting Ms. Peterson because she did not ask for a promotion when he was preparing his budget for Fiscal Year ("FY") 2017. Mr. Zheng also stated that he thought Ms. Peterson was mad at him.

32.     Medtronic's Human Resources, however, made it clear to Ms. Peterson that employees do not have to specifically request a promotion or alert their supervisor to add it to the budget.

33.     During her conversation with Mr. Zheng on June 28, 2016, Mr. Zheng told Ms. Peterson that if she wanted to receive a promotion to the Senior Engineer level, she would have to complete Lean Six Sigma Green Belt ("Green Belt") training and certification. Comparator A has not completed Green Belt training and Comparator B has not even started Green Belt training, yet both Comparator A and Comparator B have received promotions. Furthermore,

many of the supervisors and managers in the Operations Division do not have Green Belt training.

34.     Nevertheless, per Mr. Zheng's direction, Ms. Peterson has obtained Green Belt training and is working towards her certification. To date, Ms. Peterson has not been promoted and, as a result, she continues to earn substantially less than her less-qualified, but more easily promoted, male peers.

**Gender Discrimination**

35.     Ms. Peterson and her female co-workers are treated differently than their male co-workers by the predominantly male leadership at Medtronic.

36.     Ms. Peterson and her female colleagues are often left out of meetings with supervisors, managers, and directors that concern assignments and projects they work directly on.

37.     For example, in or around May 2015, Howard Mitchell (male), Director of Distribution Operations, informed Ms. Peterson that she and another female employee could no longer attend specific monthly project meetings with supervisors, managers, and directors. Mr. Mitchell stated that only he would be attending the monthly meetings going forward because he needed to have "tough" conversations with the predominantly male supervisors, managers, and directors, and he did not want Ms. Peterson or her female colleague present.

38.     As yet another example, in or around August 2015, Ms. Peterson learned she had not been invited to a Repack Center Design Project meeting. Ms. Peterson had worked on the Repack Center Design Project from initial design and it was eventually nominated for an internal Medtronic award. In or around August 2015, Ms. Peterson was called into Mr. Zheng's office to answer a question about the conceptual design on the Project and learned that Mr. Zheng and

Comparator A had just completed a conference call concerning the Project. When Ms. Peterson asked why she had not been invited to be on the call or a related meeting, Mr. Zheng told her: "you don't want to know and you don't want to go."

39.     Ms. Peterson's ideas and work product have repeatedly been given to her male colleagues to present to Medtronic leadership in meetings Ms. Peterson is excluded from attending. Ms. Peterson's supervisor, Mr. Zheng, often asks Ms. Peterson to perform the ground work on projects, such as developing labor standards, costs analyses and conceptual drawings. Then, instead of allowing Ms. Peterson to present her work product at related project-meetings, Mr. Zheng asks a male employee to present Ms. Peterson's ideas at these meetings, which often include higher-level Medtronic leadership.

40.     For example, over the past four years, Ms. Peterson has advocated that Medtronic use Easy Scan software to complement certain labor standards in place. Although Ms. Peterson compiled all of the information on Easy Scan and the benefits of its use, Mr. Mitchell requested that Comparator A present the information on Easy Scan to Medtronic leadership. And, not only was Ms. Peterson not asked to present, she was not even invited to the October 2015 meeting with Medtronic leadership regarding Easy Scan.

41.     Ms. Peterson is subject to performance standards that are higher than those set for her male co-workers. As described above, Ms. Peterson has been required to obtain training and certifications, such as Green Belt training and certification, which her male colleagues are not required to obtain.

42.     Ms. Peterson is not provided the same opportunities for career advancement as her male co-workers. For example, Ms. Peterson's male co-workers are given assignments that provide them with exposure to Medtronic leadership and travel opportunities while Ms. Peterson

is excluded from similar opportunities. When Ms. Peterson has identified certain projects that would give her exposure to Medtronic leadership and/or travel opportunities, and has requested to be assigned to those projects, Mr. Zheng has refused, often stating, "We don't need your expertise," or informing Ms. Peterson that Medtronic prefers to use local engineers. However, Mr. Zheng will later ask Ms. Peterson to review processes for improvement or perform various cost analyses for the same projects on which he previously told Ms. Peterson he did not need her expertise.

43.    Ms. Peterson's supervisor frequently minimizes her contributions and those of other female employees in verbal and written performance reviews. For example, in regards to the Repack Center Design Project that Ms. Peterson designed from the ground up, Mr. Zheng stated, "[Comparator A] built the Repack process, you just did the drawing."

44.    Male supervisors, managers, and directors speak to Ms. Peterson and other female employees in a belittling and demeaning manner. For example, Ms. Peterson has been cursed and screamed at in her work environment by male supervisors, managers, and directors.

45.    Ms. Peterson has been told by male supervisors, managers, and directors that she should curse at employees because cursing is an example of good leadership skills. Mr. Zheng once contrasted Ms. Peterson with Comparator A, who often cursed at employees, stating that cursing is the "difference" between Ms. Peterson and Comparator A, "because that's Leadership."

46.    Ms. Peterson has been criticized by male supervisors, managers, and directors for being "too direct," and Medtronic Human Resources recommended that she take a communication skills seminar for woman.

**Retaliation**

47.     Ms. Peterson has contacted Medtronic Human Resources on several occasions about disparate treatment based on gender but Defendants have failed to take any corrective action as a result.

48.     In or around August 2015, Ms. Peterson met with Monique Sneed, Medtronic's Senior Human Resources Manager, about gender discrimination. In response to her complaint, Ms. Sneed told Ms. Peterson told that she was "too direct" and may no longer be a "good fit" for Medtronic. Ms. Sneed also warned Ms. Peterson: "you don't want to be a problem."

49.     In or about March 8, 2016, Ms. Peterson sent an email to Rob Varner (male), Senior Director of Operations, complaining of disparate treatment directed at her by male supervisors, managers, and directors. Mr. Varner shared Ms. Peterson's complaint with others, including Mr. Zheng.

50.     Following her complaints, Ms. Peterson has been subjected to retaliation.

51.     After Ms. Peterson's complaint to Mr. Varner in March 2016, Mr. Zheng did not provide Ms. Peterson a promotion in 2016. As described above, on or about June 28, 2016, when Ms. Peterson asked Mr. Zheng if she would be receiving a promotion, he replied that he would not be promoting Ms. Peterson because she did not ask for a promotion when he was preparing the FY 2017 budget and because he thought Ms. Peterson was mad at him.

52.     Ms. Peterson has also been harassed and retaliated against by other male supervisors, managers, and directors. On several occasions, during project meetings, Ms. Peterson has been encouraged to leave the meetings by male leadership, with comments such as, "You can leave if you like," and "You do not have to stay for the whole meeting." During these

meetings, male managers and directors have asked Ms. Peterson whether she was recording them.

53.     Following Ms. Peterson's complaints, male supervisors, managers, and directors have ceased attending subcommittee meetings led by Ms. Peterson, which were meetings these individuals had attended regularly prior to her complaints. Subsequent to her complaints, Ms. Peterson has also been excluded from meetings that she had previously been invited or expected to attend.

54.     On June 28, 2016, during her discussion with Mr. Zheng about whether she would be promoted, Ms. Peterson complained that she was working in a hostile work environment and being discriminated against by Medtronic based on her sex. Ms. Peterson specifically complained that she was tired of her work being given to her male colleagues to present to Medtronic leadership and take credit for. In response, Mr. Zheng told Ms. Peterson that she was "too sensitive" and that she needed to "learn emotional intelligence." When Ms. Peterson told Mr. Zheng that she planned to file a complaint of gender discrimination, he advised Ms. Peterson to "get back to what's on [her] job description."

55.     On June 29, 2016, Ms. Peterson filed an internal complaint of gender discrimination with Medtronic's Office of Ethics and Compliance in Minneapolis, Minnesota. In her complaint, Ms. Peterson stated that Medtronic refused to promote her, denied her opportunities for career advancement, and treated her differently than her male co-workers due to her gender. The following day, June 30, 2016, Ms. Peterson filed an additional complaint of retaliation with Medtronic's Office of Ethics and Compliance.

56.     Although Ms. Peterson is under the impression that an investigation of her June 2016 complaints is pending, Defendants have not notified her of any investigatory progress or

finding, and Ms. Peterson is not confident that the investigation will be impartial. Since approximately August 2016, no one from Medtronic has contacted Ms. Peterson about the progress or outcome of the investigation into her June 2016 complaints.

57.     On or about July 15, 2016, Ms. Peterson was given the opportunity to "acknowledge" her FY16 year-end performance review, which concerned her performance at Medtronic from April 2015 through April 2016. In this review, Ms. Peterson referenced her June 28, 2016 conversation with Mr. Zheng regarding a promotion and complained that she was being treated differently due to her gender.

58.     On or about August 30, 2016, Ms. Peterson filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and requested the Charge be cross-filed with the Tennessee Human Rights Commission.

59.     Following her internal complaints and the filing of her Charge of Discrimination, Ms. Peterson's workload has increased substantially and she has been subjected to heightened scrutiny from her immediate supervisor, Mr. Zheng. Mr. Zheng has inquired about and criticized Ms. Peterson's workload and how many hours she is working, and strictly scrutinizes any requests she makes for accrued time off.

60.     Mr. Zheng often engages in intimidating behavior towards Ms. Peterson, including standing over her and speaking loudly and angrily. Mr. Zheng does not engage in this type of behavior towards Ms. Peterson's male co-workers.

61.     Ms. Peterson believes that after making complaints of gender discrimination, Medtronic has subjected her to a retaliatory, hostile work environment designed to force her to resign.

62.     On or about May 5, 2017, Ms. Peterson appended a written complaint of retaliation to her year-end performance review.

63.     On or about May 10, 2017, Ms. Peterson filed an internal retaliation complaint with Medtronic's Office of Ethics and Compliance. In her complaint, Ms. Peterson stated that she has been harassed by Mr. Zheng, Medtronic Human Resources, and other employees in retaliation for her June 2016 complaints, as well as the Charge of Discrimination she filed with the EEOC.

64.     On or about June 8, 2017, the EEOC issued Ms. Peterson a Notice of Right to Sue.

## PLAINTIFF LAKESHA HOOPER

65.     Ms. Hooper is currently a Customer Care Representative IV at Medtronic's Memphis office located at 1800 Pyramid Place, Memphis, Tennessee 38132. Ms. Hooper works in the Customer Care Operations Group of the Customer Service Division.

66.     Medtronic hired Ms. Hooper in September 2008 as a Customer Care Representative II (previously classified as "Associate Customer Care Representative"). Prior to working at Medtronic, Ms. Hooper had approximately seven years of experience working in customer service.

67.     Throughout her eight years of employment with Medtronic, Ms. Hooper has consistently received positive performance reviews. During her very first year of employment, Ms. Hooper was promoted from Customer Care Representative II to Customer Care Representative III. In 2012, Ms. Hooper was promoted from Customer Care Representative III to Customer Care Representative IV.

68.     Nonetheless, despite her exemplary performance during her over eight-year tenure, Medtronic has discriminated against Ms. Hooper based on gender.

**Pay and Promotion Discrimination**

69.     Since Ms. Hooper's promotion from Customer Care Representative III to Customer Care Representative IV in approximately 2012, she has never again been promoted at Medtronic. The next steps in Ms. Hooper's career path at Medtronic include Supervisor and/or Customer Care Representative V.

70.     Despite outlining her long-term career goals at Medtronic in her yearly Development Plan, Ms. Hooper observes lesser qualified male employees being swiftly promoted through the ranks and compensated at a higher rate of pay.

71.     For example, in a previous Development Plan, Ms. Hooper identified that her career goals include a promotion to a position in the Customer Service Training Department. Ms. Hooper is qualified for this position as she has trained nearly every current employee in the Customer Care Operations Group. However, when there was an opening in the Customer Service Training Department, the position was not posted and a lesser qualified male employee was placed into the position.

72.     In approximately October 2014, a male employee ("Comparator C") was transferred from the Warehouse Division of Medtronic to the Customer Service Division and into the Customer Care Operations Group with Ms. Hooper. Comparator C was placed directly into the Customer Care Representative II position, despite having no previous experience working in customer service. Comparator C held the same position as Ms. Hooper, Customer Care Representative, although she held a more senior title, Customer Care Representative IV, whereas Comparator C was a Customer Care Representative II.

73.     Having been a Customer Care Representative since 2008, Ms. Hooper trained Comparator C into the position.

74.     Comparator C had previously worked in the Warehouse Division of Medtronic, which had a different compensation range or "pay band" than the Customer Service Division.

75.     In approximately October 2014, when Comparator C transferred to the Customer Service Division and into the Customer Care Representative II position, Comparator C was able to keep his previous compensation rate, which was higher than Ms. Hooper's compensation rate in the Customer Service IV position.

76.     Medtronic employees in the Customer Service Division receive standard market adjustment raises of 2 percent each year. Since Comparator C's transfer to the Customer Service Division in approximately October 2014, Comparator C has received at least one standard raise of 2 percent.

77.     In approximately November 2016, Comparator C was promoted from Customer Care Representative II to Customer Care Representative III, receiving a further increase in compensation.

78.     After receiving a 2 percent market adjustment raise in July 2016, Ms. Hooper presently earns $20.85 per hour.

79.     Although Ms. Hooper has been a Customer Care Representative for a number of years longer than Comparator C, has a Bachelor's degree (unlike Comparator C), has substantial customer service experience outside Medtronic, has a more senior title than Comparator C, trained Comparator C when he transferred to the position, and performs the same job responsibilities as Comparator C, he is compensated at a higher rate of pay than Ms. Hooper.

80.     Ms. Hooper has knowledge that at least one other female Customer Care Representative IV is also paid less than Comparator C.

81.     Other than filing a Charge of Discrimination with the EEOC, Ms. Hooper has not complained to Medtronic about discrimination in both pay and promotion because she has been repeatedly warned in employee orientations and trainings not to speak with other employees about individual compensation.

**Gender Discrimination**

82.     Comparator C is the only male employee in the Customer Care Operations Group out of approximately six Customer Care Representatives.

83.     Ms. Hooper and her female co-workers in the Customer Care Operations Group are treated differently than Comparator C by their Principal Supervisor Brad McCormick and the Senior Customer Service Manager Danny Taylor, both males.

84.     Ms. Hooper is subject to performance standards that are higher than those set for Comparator C. Although Comparator C routinely exhibits performance issues and frequently makes errors in his work product, he is not reprimanded in the same way female employees are reprimanded for making the same or similar mistakes. In fact, on one occasion, when Ms. Hooper and her female co-workers complained to Mr. Taylor about Comparator C's performance problems and the additional work it created for them to remedy his mistakes, Mr. Taylor responded, "But he's such a nice guy!"

85.     Comparator C is provided flexible attendance privileges. Whereas Ms. Hooper and other female employees are disciplined for calling in late to meetings and required to request time off well in advance, Comparator C is not penalized for calling in late to meetings or not following procedures about requesting time off in advance. For example, Comparator C often

requests time off the night before or on the same day that he intends to take off without penalty. In contrast, if Ms. Hooper does not request time off in advance and requests time off the night before or on the same day that she intends to take off, she is disciplined. In addition, Comparator C is permitted to work from home whenever he requests to do so. However, Ms. Hooper's supervisor does not provide female employees with the same flexibility or opportunities to work from home.

86.     Comparator C is also permitted to leave early one night each week to attend college classes. On those nights, Ms. Hooper is required to cover for Comparator C and can never apply her accrued time off to take off from work that night. However, when Ms. Hooper was enrolled in college classes, Medtronic refused to provide her similar flexibility to attain her degree and she had to attend classes during her personal time.

87.     Ms. Hooper is assigned more job responsibilities than Comparator C, creating a much heavier workload. Whereas Comparator C works with a single Medtronic warehouse at a time, Ms. Hooper works with two or three warehouses at a time. Ms. Hooper also performs wide open orders, whereas Comparator C does not perform those duties.

88.     Despite Ms. Hooper's seniority and greater years of service to Medtronic as a Customer Care Representative, male members of Medtronic leadership look to Comparator C as the leader of the Customer Care Operations Group and approach Comparator C first with questions.

89.     On or about December 27, 2016, Ms. Hooper filed a Charge of Discrimination with the EEOC, and requested that the Charge be cross-filed with the Tennessee Human Rights Commission. On May 25, 2017, the EEOC issued Ms. Hooper a Notice of Right to Sue.

## TITLE VII AND TENNESSEE HUMAN RIGHTS ACT
## CLASS ACTION ALLEGATIONS

90.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

## PATTERN, PRACTICE AND DISPARATE IMPACT
## OF GENDER DISCRIMINATION

91.     At all levels, Medtronic's leadership is predominately comprised of men. Upon information and belief, it is estimated that approximately 90 percent of all leadership positions at Medtronic are filled by male employees.

92.     Medtronic's predominantly male leadership maintains control over establishing, reviewing and approving the policies and practices concerning the terms of conditions of employment for Medtronic's female employees, including, but not limited to, job assignment, career advancement opportunities, performance evaluation, promotion, and compensation.

93.     Medtronic's predominantly male leadership is responsible for establishing, reviewing and approving the policies and practices that either result in systemic disparate treatment of women at Medtronic or have a disparate impact on female employees.

94.     Decisions concerning job assignment, career advancement opportunities, performance evaluation, promotion, and compensation are made by Medtronic's predominantly male leadership, who is specifically responsible for recommending, requesting, and/or approving promotions and compensation for employees.

95.     Medtronic's predominantly male leadership makes decisions concerning job assignment, career advancement opportunities, performance evaluation, promotion, and compensation that favor male employees over similarly situated female employees.

96.     For example, pursuant to Medtronic policy, each position at Medtronic is associated with a specific compensation range or "pay band." Medtronic provides supervisors, managers, and directors with a common mode of discretion to compensate employees with regard to the pay band. Other factors, such as experience, "soft skills"—interpersonal skills, character traits or attitudes—and specialized skills, can be considered as well. However, Medtronic does not indicate to supervisors, managers, and directors how these other factors should be weighed to effect compensation for each specific position.

97.     Medtronic's pay band policy results in Medtronic failing to compensate female employees at the same rate as similarly situated male employees. Through Medtronic's pay band policy, Medtronic's gives its predominantly male management discretion to provide more favorable compensation rates or salaries to male employees, irrespective of performance or qualification. This policy and/or practice results in Medtronic failing to compensate female employees at the same rate as similarly situated male employees. Medtronic's predominantly male leadership is allowed to exercise discretion to compensate male employees at the top of or even above the pay band, and to compensate similarly situated female employees at the lower end of the pay band.

98.     Medtronic's predominantly male management often does not disclose to employees the precise range of the pay band associated with an employee's position, and often does not disclose what percentile the employee falls in relative to other employees with the same pay band. And since Medtronic has a policy of prohibiting employees from speaking about pay, employees are otherwise kept in the dark about their pay in relation to others.

99.     In addition, Medtronic does not require posting for every open position, and employees are frequently promoted to unposted jobs at the discretion of their supervisors,

managers, and/or directors. Medtronic's predominantly male leadership is given discretion to promote certain employees, irrespective of performance, and to delay or deny promotions to other employees. This practice and/or policy results in Medtronic failing to promote or advance female employees at the same rate as similarly situated male employees.

100.    With open positions shrouded in mystery, Medtronic's predominantly male management is given discretion to promote less qualified male employees over similarly situated female employees who are more qualified. For example, Medtronic's predominantly male leadership is provided discretion to emphasize "soft skills," such as interpersonal skills, character traits or attitudes, as opposed to performance data, qualification or previous experience, to promote less qualified male employees instead of more qualified female employees. Due to the lack of transparency concerning eligibility for promotions, baseless and vague criticisms concerning "soft skills" may be lodged against a female employee, given undue weight, and become a factor in her evaluation and promotion prospects.

101.    The commonly imposed decisions, policies, and practices of Medtronic's predominantly male leadership deny female employees of leadership and higher-paying positions, and have the effect of creating gender-based stratification at Medtronic. The means of accomplishing this gender-based hierarchy where male employees dominate Medtronic's leadership at all levels, include, but are not limited to, Medtronic's policies and practices concerning job assignment, career advancement, performance evaluation, promotion, and compensation. These policies and practices lack transparency, sufficient standards and controls, opportunities for internal redress, and oversight. Consequently, Medtronic employees are developed, evaluated, compensated, and promoted within a system that is inadequately designed or implemented to equitably compensate or promote employees without regard to gender.

102.    Medtronic's common employment policies and/or practices have been implemented in a manner which has had an adverse disparate impact on female employees. Without adequate transparency, standards, and guidelines necessary to ensure that Medtronic's employment policies are applied equally to both male and female employees, Medtronic's predominantly male leadership exploits its decision-making power and discretion to make compensation and promotion decisions that have the effect of favoring male employees over similarly situated female employees.

103.    Decision-making in a common mode by Medtronic's predominantly male leadership has been implemented in a standard operating procedure which has had a pattern-and-practice of intentional discrimination or having an adverse impact on female employees. This is done, for example, through Medtronic's pay band policy, Medtronic's policy of prohibiting employees from speaking about compensation and keeping employees in the dark about their pay relative to others, and Medtronic's failure to post every open position.

104.    Gender discrimination in job assignment, career advancement opportunities, performance evaluation, promotion, and compensation is company-wide because, upon information and belief, it emanates from inadequate and flawed policies that are established, reviewed and approved by Medtronic's predominantly male leadership.

105.    Although Medtronic possesses a Human Resources Department with associated complaint and compliance policies, complaints of discrimination made to Human Resources often go unaddressed. There is no meaningful separation between the Human Resources complaint processes and Medtronic's predominantly male leadership who are responsible for the discriminatory conditions. Female employees who complain about unequal treatment in

promotion and compensation regularly face retaliation and others are dissuaded from complaining altogether.

106.    Medtronic tolerates a workplace in which female employees are subjected to unequal treatment and retaliation for complaining about gender discrimination. Medtronic routinely fails to impose adequate discipline on employees who engage in discrimination or retaliation. Medtronic has similarly failed to create adequate incentives for its employees to comply with federal and state law prohibiting discrimination and retaliation.

107.    Medtronic has demonstrated a reckless disregard and deliberate indifference to its female employees by failing to correct evidence of gender discrimination in its workplace.

108.    Due to Medtronic's pattern-and-practice of gender discrimination and disparate impact gender discrimination, the Class Representatives, as well as the proposed Classes they seek to represent, have been individually and collectively discriminated against. Plaintiffs' claims include, but are not limited to: (i) compensating the Class Representatives and other female employees less than similarly situated male employees; (ii) failing to promote the Class Representatives and other female employees at the same rate as similarly situated male employees; (iii) creating a hostile work environment; (iv) making discriminatory hires, job assignments and decisions concerning career advancement, (v) engaging in retaliation; and (vi) failing to prevent, adequately investigate and/or correct instances of gender discrimination and retaliation in the workplace.

109.    The Class Representatives and proposed Classes have no adequate or complete remedy at law to remedy the wrongs alleged herein. The Class Representatives bring this action as it is their only means of securing such relief for themselves and the proposed Classes. The Class Representatives and proposed Classes have suffered, and will continue to suffer,

irreparable harm from Medtronic's ongoing, unlawful policies and practices, unless those policies and practices which apply to the Class Representatives and proposed Classes are enjoined by the Court.

**Class Definitions of the Title VII and THRA Classes**

110.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Representatives bring this action on their own behalf and on behalf of the **Title VII Class** of similarly situated persons defined as follows:

> All current, former and future female employees who are, have been, or will be employed by Defendants in any position during the applicable liability period, including until the date of judgment in this case.

111.    Upon information and belief, there are over 100 such employees in the proposed Title VII Class.

112.    Class Representatives bring this action on their own behalf and on behalf of the **THRA Class** of similarly situated persons defined as follows:

> All current, former and future female employees who are, have been, or will be employed by Defendants in the State of Tennessee in any position during the applicable liability period, including until the date of judgment in this case.

113.    Upon information and belief, there are over 100 such employees in the proposed THRA Class.

114.    Plaintiffs reserve the right to modify the Title VII Class and the THRA Class definitions, as well as the class periods, pursuant to discovery that is conducted hereafter.

115.    The Class Representatives seek to represent all of the female employees described above in the Title VII and THRA Classes. The company-wide gender discrimination described in this Complaint has been continuing in nature.

116.     This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rule of Civil Procedure 23.

**Efficiency of Class Prosecution of Class Claims**

117.     Certification of the proposed Title VII Class and THRA Class, as described above, is the most efficient means of resolving the questions of law and fact that are common to the claims of the Class Representatives and the proposed Classes.

118.     The individual claims of the Class Representatives and the claims of the proposed Classes require the resolution of common questions, including, but not limited to, whether Medtronic engaged in a pattern-and-practice of gender discrimination or disparate impact discrimination against female employees.

119.     The Class Representatives have standing to seek such relief because of the adverse effects that Medtronic's discrimination has had on them individually. The Class Representatives seek remedies to eliminate the adverse effects of gender discrimination on themselves and on proposed Class Members, and to prevent continued gender discrimination at Medtronic. The injuries of the Class Representatives and proposed Class Members can be redressed through class-wide relief, such as an injunction, and through the class-wide and individual remedies sought in this action.

120.     To obtain relief for themselves and the proposed Class Members, the Class Representatives must establish that Medtronic engaged in systemic gender discrimination.

121.     Without certification of the proposed Title VII Class and THRA Class, the same factual and legal issues would be subject to re-litigation in numerous individual actions, and there is a risk that inconsistent or varying adjudications would establish conflicting obligations and standards of conduct for Medtronic. Certification of the proposed Title VII and THRA

Classes is the most efficient means to prosecute these claims, and present the evidence and arguments necessary to resolve the common questions of law and fact for the Class Representatives and proposed Classes, as well as Medtronic.

**Numerosity and Impracticability of Joinder**

122.     Members of both Classes are so numerous that their individual joinder is impractical. Upon information and belief, both proposed Classes consist of over 100 current, former and future employees during the liability period. The precise identities, phone numbers and addresses of Class Members, are unknown to the Plaintiffs, but may and should be known with proper and full discovery of Defendants, third parties, and their respective records.

**Existence of Common Questions of Law and Fact**

123.     This action requires the adjudication of questions of law and fact that are common to the claims of the Class Representatives and the claims of the Proposed Classes they seek to represent. The claims of the Class Representatives and the Proposed Classes depend on the answers to these common questions of law and fact.

124.     The common questions of law include, but are not limited to:

   (i)    the proper standards for proving a pattern-and-practice of discrimination by Medtronic against its female employees;

   (ii)   the proper standards for proving disparate impact gender discrimination by Medtronic;

   (iii)  whether Medtronic has engaged in an unlawful pattern-and-practice of systemic gender discrimination under Title VII and/or the THRA;

   (iv)   whether Medtronic has engaged in unlawful disparate impact gender discrimination under Title VII and/or the THRA;

   (v)    whether Medtronic is liable for a continuing violation of Title VII and/or the THRA;

   (vi)   whether Medtronic should be enjoined from engaging in future acts of unlawful gender discrimination; and

(vii) whether punitive damages relief for the Classes is warranted.

125. The common questions of fact include, but are not limited to:

    (i) whether Medtronic has utilized policies and practices concerning job assignment, career advancement, performance evaluation, promotion, and compensation that lack transparency, sufficient standards and controls, opportunities for internal redress, or oversight;

    (ii) whether, through the use of those above policies and practices, Medtronic:

        a. placed or kept female employees in job titles or classifications lower than similarly situated male employees;

        b. failed to develop or provide career advancement opportunities to female employees in a manner commensurate with similarly situated male employees;

        c. denied or delayed the promotion of qualified female employees into higher-level jobs and instead promoted less qualified male employees to those higher-level jobs;

        d. failed to promote female employees at the same rate as similarly situated male employees;

        e. disparately evaluated and classified female and male employees' job performance; and

        f. compensated female employees less than similarly situated men;

    (iii) whether Medtronic intentionally or knowingly:

        a. placed or kept female employees in job titles or classifications lower than similarly situated male employees;

        b. failed to develop or provide career advancement opportunities to female employees in a commensurate manner to similarly situated male employees;

        c. denied or delayed the promotion of qualified female employees into higher-level jobs and instead promoted less qualified male employees to those higher-level jobs;

        d. failed to promote female employees at the same rate as similarly situated male employees;

        e. disparately evaluated and classified female and male employees' job performance; and

      f.   compensated female employees less than similarly situated men;

    (iv)   whether Medtronic demonstrated a reckless disregard and/or deliberate indifference to evidence of gender discrimination in its workplace; and

    (v)   whether Medtronic failed to adequately train, coach or discipline employees on equal opportunity principles and compliance.

126.    The questions of law and fact listed above will yield common answers for the Class Representatives and proposed Classes so as to determine whether Medtronic is liable under Title VII and the THRA.

127.    Medtronic's policies and practices concerning job assignment, career advancement, performance evaluation, promotion, and compensation to which the Class Representatives and proposed Classes were and/or are subjected, are set by Medtronic's predominantly male leadership. These policies and practices are not unique or limited to any one office location. These policies and practices apply to numerous office locations, and affect the Class Representatives and Class Members in the same way, regardless of the office, division or position in which they work and/or worked.

128.    Gender discrimination in job assignment, career advancement opportunities, performance evaluation, promotion, and compensation occurs as a pattern-and-practice throughout all of Medtronic's offices.

129.    Medtronic's policies and practices concerning job assignment, career advancement, performance evaluation, promotion, and compensation lack transparency, sufficient standards and controls, opportunities for internal redress, and oversight. As a result, Medtronic's predominantly male leadership is provided discretion to make employment decisions through subjective decision-making and based on personal familiarity with male subordinates, instead of performance, qualification, experience or equal opportunity. Consequently, male employees have been compensated more favorably and promoted more

rapidly to higher-level and higher-paying jobs than similarly situated female employees. Medtronic's policies and practices have had and continue to have a disparate, adverse impact on female employees in regards to compensation and promotion.

**Typicality of Claims and Relief Sought**

130. The claims of the Class Representatives are typical of the claims of the members of the proposed Classes.

131. Both the Class Representatives and the members of proposed Classes are female employees who have worked for Medtronic during the liability period.

132. The Class Representatives and all members of the proposed Classes have similarly suffered harm arising from Medtronic's violations of law as alleged herein. Gender discrimination in job assignment, career advancement opportunities, performance evaluation, promotion, and compensation has affected and continues to affect the compensation and employment opportunities of the Class Representatives and members of the proposed Classes in the same or similar ways.

133. The relief sought by the Class Representatives for the gender discrimination complained of herein is also typical of the relief sought on behalf of the proposed Classes. The Class Representatives seek the following categories of relief for their individual claims and for those claims of the proposed Classes: legal, equitable and injunctive relief, including all relief available by statute.

134. The relief necessary to remedy the claims of the Class Representatives is the same relief necessary to remedy the claims of the members of the proposed Classes.

**Adequacy of Representation**

135.    The Class Representatives will adequately represent the interests of the proposed Classes. The Class Representatives' interests are co-extensive with those of the proposed Classes. The Class Representatives have been treated in the same manner by Medtronic as other proposed Class Members, and have been damaged by Medtronic's treatment in the same manner as the proposed Class Members by Medtronic's unlawful policies and practices.

136.    The interests of the Class Representatives are in no way adverse to the members of the proposed Classes that they seek to represent.

137.    The Class Representatives are committed to vigorously prosecuting this action and have retained competent counsel, who are experienced in litigating major employment class and collective actions and able to meet the time and resource demands necessary to litigate a class of this size and complexity. The Class Representatives and its counsel will fairly and adequately protect the interests of the members of the Class.

**Requirements of Rule 23(b)(2)**

138.    Medtronic has acted or refused to act on grounds that apply generally to the Class Representative and the proposed Classes by adopting and implementing policies and practices that are discriminatory on the basis of gender. Medtronic's policies and practices concerning job assignment, career advancement, performance evaluation, promotion, and compensation to which the Class Representatives and the proposed Classes are subjected are set by Medtronic's predominantly male leadership. These policies and practices are not unique or limited to any one office location, but rather apply to all office locations, and thus affect the Class Representatives and Class Members in the same way, regardless of the office, division or position in which they work and/or worked.

139.    Medtronic has acted or refused to act on grounds that apply generally to the Class

Representative and the Classes by, *inter alia*:

> (i)    placing or keeping female employees in job titles or classifications lower than similarly situated male employees;
>
> (ii)   failing to develop or provide career advancement opportunities to female employees in a commensurate manner to similarly situated male employees;
>
> (iii)  denying the promotion of qualified female employees into higher-level jobs and instead promoting less qualified male employees to those higher-level jobs;
>
> (iv)   failing to promote female employees at the same rate as similarly situated male employees;
>
> (v)    disparately evaluating and classifying female and male employees' job performance; and
>
> (vi)   compensating female employees less than similarly situated men.

140.    Medtronic's pattern-and-practice of gender discrimination and/or disparate impact gender discrimination in job assignment, career advancement opportunities, performance evaluation, promotion, and compensation have made appropriate the requested injunctive and declaratory relief respecting the Classes as a whole.

**Requirements of 23(b)(3)**

141.    The questions of law and fact common to class members identified in paragraphs 124-125 above predominate over any questions affecting only individual members.

142.    Medtronic's common policies and practices with respect to job assignment, career advancement, performance evaluation, promotion, and compensation have resulted in a pattern-and-practice of gender discrimination or disparate impact gender discrimination against Plaintiffs and the members of the proposed Classes with respect to the terms and conditions of their employment. These common discriminatory policies and practices applicable to the Class Representatives and Class Members are subject to generalized proof and predominate over those

32

issues that are subject only to individualized proof. This common proof will advance the litigation by resolving issues for the Class Representatives and all members of the proposed Classes at once.

143.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and the proposed Classes. The expense and burden of individual litigation and the cost of proving Medtronic's pattern-and-practice of discrimination makes it impracticable for the proposed Class Members to seek redress individually for the wrongful conduct alleged in this Complaint. Certification and maintenance of a class action promotes judicial economy by consolidating a large class of plaintiffs litigating identical claims. Were each Class Member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interests of justice and equity. Litigating these claims as a class, in a single action, will streamline discovery and avoid the needless repetition of evidence at trial.

144.    The claims of Plaintiff and all proposed Class Members interrelate such that the interests of the class members will be fairly and adequately protected in their absence.

**EQUAL PAY ACT**
**COLLECTIVE ACTION ALLEGATIONS**

145.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

146.    Pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as amended by the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), Plaintiffs bring this action individually and as a collective action on behalf of all members of the proposed EPA Collective defined below.

147.     The proposed **EPA Collective** is defined as follows:

> All current, former and future female employees who are, have been, or will be employed by Defendants in any position from three years prior to the filing of this Complaint until the date of judgment in this case.

148.     Through this collective action, Plaintiffs seek to represent similarly situated female employees who were subjected to and who continue to be subjected to pay that is not equal to that received by their male coworkers for performing substantially equal work, requiring the same skill, effort, and responsibility, under the same or similar working conditions. These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent. These similarly situated individuals are known to Defendants and readily identifiable through Defendants' employment records.

149.     Claims for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by the Plaintiffs, because their claims are similar to the claims of the EPA Collective.

150.     Plaintiffs and the proposed EPA Collective are similarly situated because they are subject to Medtronic's common compensation policies and practices resulting in unequal pay based on sex.

151.     Plaintiffs have consented in writing to be a part of this action, and their consent forms are attached as Exhibit A. As this case progresses, other individuals may file consent forms with the Court and join as plaintiffs.

## CAUSES OF ACTION

## COUNT I

### GENDER DISCRIMINATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
### 42 U.S.C. § 2000e, *et seq.*
### (On Behalf of All Class Representatives, in their Individual and Representative Capacities, and the Title VII Class)

152.    Plaintiffs, on behalf of themselves and the Title VII Class Members, re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

153.    This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all members of the Title VII Class.

154.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." or to "limit, segregate, or classify [an employer's] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [the employee's] status as an employee, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a).

155.    By the actions described above, Defendants have discriminated against, and continue to discriminate against, Plaintiffs and the proposed Title VII Class in violation of Title VII by subjecting them to disparate treatment on the basis of their sex/gender.

156.    Defendants' common policies and practices with respect to job assignment, career advancement, performance evaluation, promotion, and compensation have resulted in a pattern

and/or practice of gender discrimination against Plaintiffs and the members of the proposed Title VII Class with respect to the terms and conditions of their employment.

157. By the actions described above, Defendants have engaged in conduct that has had a disparate impact on Plaintiffs and the proposed Title VII Class based on their sex/gender. Defendants' common policies and practices with respect to job assignment, career advancement, performance evaluation, promotion, and compensation have resulted in a disparate impact on the Plaintiffs and the members of the proposed Title VII Class with respect to the terms and conditions of their employment.

158. As described above, Defendants have discriminated against the Plaintiffs and all members of the proposed Title VII Class by treating them differently from and less favorably than similarly situated male employees, including, but not limited to: (i) compensating the Plaintiffs and members of the proposed Title VII Class less than similarly situated male employees; (ii) denying or delaying the promotion of Plaintiffs and members of the proposed Title VII Class into higher-level jobs and instead promoting less qualified male employees; (iii) failing to promote the Plaintiffs and members of the proposed Title VII Class at the same rate as similarly situated male employees; (iv) disparately evaluating and classifying female and male employees' job performance; (v) creating a hostile work environment; and (vi) making discriminatory hires, job assignments and decisions concerning job assignments and career advancement opportunities.

159. Defendants have failed to prevent, adequately investigate or correct instances of sex/gender discrimination in their workplace.

160. Due to the continuous nature of Defendants' unlawful conduct in violation of Title VII, which has persisted throughout the employment of the Class Representatives and the

proposed Title VII Class, the Class Representatives and members of the proposed Title VII Class are entitled to the application of the continuing violations doctrine to all violations alleged in this Complaint.

161.    As a direct result of Defendants' unlawful conduct in violation of Title VII, Plaintiffs and the proposed Title VII Class Members have suffered and will continue to suffer past and present loss of income, loss of benefits, loss of future employment opportunities and other economic damages, as well as emotional distress, mental anguish, humiliation, embarrassment, loss of reputation and other non-economic damages.

162.    As a result of Defendants' unlawful conduct in violation of Title VII, the Class Representatives and the members of the proposed Title VII Class are entitled to all legal and equitable remedies available for violations of Title VII, including, but not limited to, compensatory damages.

163.    As a result of Defendants' unlawful conduct in violation of Title VII, Plaintiffs and the proposed Title VII Class Members are entitled to attorneys' fees and costs in connection with this claim. 42 U.S.C. § 2000e-5(k).

164.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in disregard of the federally protected rights of the Plaintiffs and proposed Title VII Class Members, entitling the Class Representatives and all members of the proposed Class to punitive damages.

## COUNT II

**DENIAL OF EQUAL PAY FOR EQUAL WORK
IN VIOLATION OF THE EQUAL PAY ACT OF 1963
29 U.S.C. § 206,** *et seq.*
**(On Behalf of All Class Representatives, in their Individual and Representative Capacities,
and the EPA Collective)**

165. Plaintiffs, on behalf of themselves and the EPA Collective, re-allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

166. This Count is brought on behalf of all Plaintiffs in their individual and representative capacities, and all members of the proposed EPA Collective, including all EPA Plaintiffs who "opt in" to this action.

167. The FLSA, 29 U.S.C. § 201, *et seq.,* as amended by the EPA, provides that it is unlawful to discriminate "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . ." 29 U.S.C. § 206(d).

168. By the actions described above, Defendants have intentionally discriminated against the Plaintiffs and the proposed EPA Collective in violation of the EPA by providing them with lower pay than similarly situated male employees, despite that the Plaintiffs and the proposed EPA Collective performed or continue to perform the same or substantially similar duties, requiring the same skill, effort, and responsibility, under the same or similar working conditions.

169. By the actions described above, Defendants have discriminated against the Plaintiffs and proposed EPA Collective by, including, but not limited to: (i) subjecting Plaintiffs and members of the proposed EPA Collective to common disparate pay policies; (ii) failing to compensate Plaintiffs and members of the proposed EPA Collective at a level commensurate with similarly situated men who performed the same or substantially equal work and/or hold the same or substantially similar job classifications, job titles, job codes, job functions, job

descriptions and/or job duties; and (iii) failing to provide Plaintiffs and members of the proposed EPA Collective with equal pay by denying them job assignments, career advancement opportunities and promotions that would have resulted in greater compensation to them, in favor of male employees who performed the same or substantially equal work.

170.    The difference in pay between Medtronic's male and female employees was not due to any seniority system, merit system, or system which measures earnings by quantity or quality of production, but based on sex/gender.

171.    Defendants have failed to prevent, adequately investigate or correct instances of unequal pay in their workplace.

172.    Defendants' actions described above constitute a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a), and thus the three-year statute of limitations applies to such violations.

173.    As a direct result of Defendants' unlawful conduct in violation of the EPA, Plaintiffs and the proposed EPA Collective have suffered and will continue to suffer past and present loss of income, loss of benefits, loss of future employment opportunities and other economic damages.

174.    As a result of Defendants' unlawful conduct in violation of the EPA, the Plaintiffs and the members of the proposed EPA Collective are entitled to all legal and equitable remedies available for violations of EPA, including, but not limited to, back pay, liquidated damages, pre- and post-judgment interest, and other compensation available pursuant to 29 U.S.C. § 216.

175.    As a result of Defendants' unlawful conduct in violation of the EPA, Plaintiffs and the proposed EPA Collective Action Members are entitled to attorneys' fees and costs in connection with this claim. 29 U.S.C. § 216(b).

176.    Defendants conduct has been intentional, deliberate, and willful, entitling the

Plaintiffs and all members of the proposed EPA Collective to three full years of damages. 29

U.S.C. § 216(b).

## COUNT III

**GENDER DISCRIMINATION
IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT**
**Tenn. Code Ann. § 4-21-101,** *et seq.*
**(On Behalf of All Class Representatives, in their Individual and Representative Capacities,
and the THRA Class)**

177.    Plaintiffs, on behalf of themselves and the proposed THRA Class Members, re-

allege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set

forth herein.

178.    This Count is brought on behalf of all Plaintiffs in their individual and

representative capacities, and all members of the proposed THRA Class.

179.    The Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*

("THRA"), provides that it is unlawful for an employer to "discriminate against an individual

with respect to compensation, terms, conditions or privileges of employment because of such

individual's . . . sex . . ." or to "[l]imit, segregate or classify an employee or applicants for

employment in any way that would deprive or tend to deprive an individual of employment

opportunities or otherwise adversely affect the status of an employee, because of . . . sex . . ."

Tenn. Code Ann. § 4-21-401(a).

180.    By the actions described above, Defendants have intentionally discriminated

against the Plaintiffs and the proposed THRA Class in violation of the THRA by subjecting them

to disparate treatment on the basis of their sex/gender. Defendants' common policies and

practices with respect to job assignment, career advancement, performance evaluation,

promotion, and compensation have resulted in a pattern-and-practice of gender discrimination against Plaintiffs and the members of the proposed THRA Class with respect to the terms and conditions of their employment.

181.    By the actions described above, Defendants have engaged in conduct that has had a disparate impact on individuals based on their sex/gender. Defendants' common policies and practices with respect to job assignment, career advancement, performance evaluation, promotion, and compensation have resulted in a disparate impact on the Plaintiffs and the members of the proposed THRA Class with respect to the terms and conditions of their employment.

182.    As described above, Defendants have discriminated against the Plaintiffs and all members of the proposed THRA Class by treating them differently from and less favorably than similarly situated male employees, including, but not limited to: (i) compensating the Plaintiffs and members of the proposed THRA Class less than similarly situated male employees; (ii) denying or delaying the promotion of Plaintiffs and members of the proposed THRA Class into higher-level jobs and instead promoting less qualified male employees; (iii) failing to promote the Plaintiffs and members of the proposed THRA Class at the same rate as similarly situated male employees; (iv) disparately evaluating and classifying female and male employees' job performance; (v) creating a hostile work environment; and (vi) making discriminatory hires, job assignments and decisions concerning job assignments and career advancement opportunities.

183.    Defendants have failed to prevent, adequately investigate or correct instances of gender discrimination in their workplace.

184.    Due to the continuous nature of Defendants' unlawful conduct in violation of the THRA, which has persisted throughout the employment of the Class Representatives and the

proposed THRA Class Members, the Class Representatives and the members of the proposed THRA Class are entitled to the application of the continuing violations doctrine to all violations alleged in this Complaint.

185.    As a direct result of Defendants' unlawful conduct in violation of the THRA, Plaintiffs and the proposed THRA Class Members have suffered and will continue to suffer past and present loss of income, loss of benefits, loss of future employment opportunities and other economic damages, as well as emotional distress, mental anguish, humiliation, embarrassment, loss of reputation and other non-economic damages.

186.    As a result of Defendants' unlawful conduct in violation of the THRA, the Class Representatives and members of the proposed THRA Class are entitled to all legal and equitable remedies available for violations of the THRA, including, but not limited to, compensatory damages.

187.    As a result of Defendants' unlawful conduct in violation of THRA, Plaintiffs and the proposed THRA Class Members are entitled to attorneys' fees and costs in connection with this claim. Tenn. Code Ann. § 4-21-311.

188.    Defendants conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in disregard of the rights of the Plaintiffs and proposed THRA Class Members, entitling the Class Representatives and all members of the Class to punitive damages.

## COUNT IV

**RETALIATION**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e,** *et seq.*
**(On Behalf of Plaintiff Peterson)**

189.    Plaintiff Peterson re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

190.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), provides that it is unlawful for an employer to discriminate against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.

191.     Defendants retaliated against Plaintiff Peterson for engaging in oppositional and/or protected activities, including, complaining internally about gender discrimination and filing a charge of discrimination with the EEOC.

192.     Defendants took adverse employment actions against Plaintiff Peterson for engaging in protected activities, including, subjecting Plaintiff Peterson to heightened scrutiny and unfavorable terms and conditions of employment, including, but not limited to, negative performance evaluations, denial of promotions, denial of career advancement opportunities, and denial of pay increases.

193.     As a direct and proximate result of Defendants' unlawful conduct in violation of Title VII, Plaintiff Peterson has suffered and continues to suffer past and present loss of income, loss of benefits, loss of future employment opportunities and other economic damages, as well as emotional distress, mental anguish, humiliation, embarrassment, loss of reputation and other non-economic damages.

194.     As a result of Defendants' unlawful conduct in violation of Title VII, Plaintiff Peterson is entitled to all legal and equitable remedies available for violations of Title VII, including, but not limited to, compensatory damages.

195. Also as a result of Defendants' unlawful conduct in violation of Title VII, Plaintiff Peterson is entitled to attorneys' fees and costs in connection with this claim. 42 U.S.C. § 2000e-5(k).

196. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in disregard of the federally protected rights of Plaintiff Peterson, entitling Plaintiff Peterson to punitive damages.

## COUNT V

### RETALIATION
### IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT
### Tenn. Code Ann. § 4-21-101, *et seq.*
### (On Behalf of Plaintiff Peterson)

197. Plaintiff Peterson re-alleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

198. The Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), provides that it is unlawful for an employer to "[r]etaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding, or hearing under this chapter . . ." Tenn. Code Ann. § 4-21-301.

199. Defendants retaliated against Plaintiff Peterson for engaging in oppositional and/or protected activities, including, complaining internally about gender and race discrimination and filing a charge of discrimination with the EEOC.

200. Defendants took adverse employment actions against Plaintiff Peterson for engaging in protected activities, including, subjecting her to heightened scrutiny and unfavorable terms and conditions of employment, including, but not limited to, negative performance

evaluations, denial of promotions, denial of career advancement opportunities, and denial of pay increases.

201.    As a direct and proximate result of Defendants' unlawful conduct in violation of the THRA, Plaintiff Peterson has suffered and continues to suffer past and present loss of income, loss of benefits, loss of future employment opportunities and other economic damages, as well as emotional distress, mental anguish, humiliation, embarrassment, loss of reputation and other non-economic damages.

202.    As a result of Defendants' unlawful conduct in violation of the THRA, Plaintiff Peterson is entitled to all legal and equitable remedies available for violations of the THRA, including, but not limited to, compensatory damages.

203.    As a result of Defendants' unlawful conduct in violation of the THRA, Plaintiff Peterson is entitled to attorneys' fees and costs in connection with this claim. Tenn. Code Ann. § 4-21-311.

204.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in disregard of the protected rights of Plaintiff Peterson, entitling the Plaintiff Peterson to punitive damages.

**PRAYER FOR RELIEF**
**ON CLASS, COLLECTIVE ACTION, AND INDIVIDUAL CLAIMS**

Plaintiffs, on behalf of themselves, the proposed Title VII Class, THRA Class, and the EPA Collective, pray for judgment against Defendants as follows:

   A. Issuance of an Order certifying this case as a class action maintainable under Rule 23 (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of the proposed Title VII and THRA Classes, appointing Plaintiffs as Class Representatives of these Classes, and appointing the undersigned counsel as Class Counsel;

B. Designation of this action as a collective action on behalf of Plaintiffs and the proposed EPA Collective and:

    a. Ordering prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated members of the EPA Collective Action Opt-In Class, to apprise them of the pendency of this action, and permit them to assert timely EPA claims in this action by filing individual consent forms pursuant to 29 U.S.C. § 216(b); and

    b. Tolling the statute of limitations on the claims of all members of the EPA Collective Action Opt-In Class from the date the original complaint was filed until the Class Members are provided with notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

C. Judgment that Plaintiffs and the proposed Title VII Class, THRA Class, and the EPA Collective are entitled to protection under Title VII, the EPA and the THRA;

D. Judgment against Defendants that their employment policies and practices challenged herein are illegal and in violation of the rights of Plaintiffs and the proposed Title VII Class, THRA Class, and the EPA Collective under Title VII, the Equal Pay Act and the THRA;

E. Judgment that Defendants' actions as described above were willful;

F. Issuance of a permanent injunction enjoining Defendants, including its directors, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them, from engaging in gender discrimination and other unlawful conduct alleged in this Complaint;

G. Issuance of an Order directing Defendants to:

    a. Take all affirmative steps necessary to provide equal employment opportunity for its female employees, including, but not limited to, implementing policies of developing, compensating and promoting female employees in an non-discriminatory manner;

    b. Take all affirmative steps necessary to remedy the past, present and continuing effects of the discrimination and other unlawful conduct alleged in the Complaint; and

    c. Take all affirmative steps necessary to prevent repeated occurrences in the future;

H. Issuance of an Order to Defendants to adjust the compensation rates and benefits for the Plaintiffs and the proposed Title VII Class, THRA Class, and the EPA

Collective to the level that they would have enjoyed but for Defendants' discriminatory policies and practices;

I.    Issuance of an Order to Defendants to place the Plaintiffs and the proposed Title VII Class and THRA Class into those jobs and/or positions they would now be occupying but for Defendants' discriminatory policies and practices;

J.    Awarding Plaintiffs and the proposed Title VII Class, THRA Class, and the EPA Collective in the amount of back pay, front pay, lost benefits, and any other damages for lost compensation and job benefits, including any other legal or equitable remedies, necessary to make Plaintiffs and the proposed Title VII Class, THRA Class, and the EPA Collective whole from Defendants' past discrimination;

K.    Awarding Plaintiffs and the proposed EPA Collective back wages and an equal amount as liquidated damages;

L.    Awarding Plaintiffs and the proposed Title VII Class and THRA Class emotional distress, mental anguish, humiliation, embarrassment, loss of reputation and any other legal or equitable remedies necessary to make them whole from Defendants' past discrimination;

M.    Awarding punitive damages to Plaintiffs and the proposed Title VII Class and THRA Class;

N.    Awarding pre-judgment interest and post judgment interest;

O.    Awarding reasonable attorneys' fees, costs and expenses incurred in prosecuting these claims;

P.    All other relief available by statute;

Q.    Leave to amend to add or remove corporate defendants;

R.    Leave to amend to add additional state law claims;

S.    Leave to add additional parties by motion, the filing of written consent forms, or any other method approved by the Court; and

T.    For such other and further relief, in law or equity, as this Court may deem just and equitable.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable of right by jury.

Dated:  June 30, 2017                          Respectfully submitted,

s/ Rebekah L. Bailey

**NICHOLS KASTER, PLLP**

David E. Schlesinger, MN Bar No. 0387009*
     schlesinger@nka.com
Rebekah L. Bailey, MN Bar No. 0389599**
     bailey@nka.com
Michelle L. Kornblit, MN Bar No. 0397778*
     mkornblit@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55427
Phone: (612) 256-3200
Fax: (612) 338-4878
*Pro Hac Vice application forthcoming
**Admitted to District

**COLLINS & HUNTER, PLLC**

Anne Hunter, BPR # 022407
     anne@collinshunter.com
Heather Moore Collins, BPR # 026099
     heather@collinshunter.com
7000 Executive Center Drive, Suite 320
Brentwood, TN  37027
Phone: (615) 724-1996
Fax: (615) 691-7019

**Attorneys for Plaintiffs, Proposed Classes and
EPA Collective**